# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**LONITA JOHNSON,**

      **Plaintiff,**

**v.**                          **Case No.: 8:21-cv-1900-CEH-JSS**

**G4S SECURE SOLUTIONS**
**(USA) INC.,**

      **Defendant.**

_____/

## FIRST AMENDED CLASS ACTION COMPLAINT
## AND DEMAND FOR JURY TRIAL

Plaintiff, Lonita Johnson ("Plaintiff"), pursuant to Fed.R.Civ.P. 15, with Defendant's written consent, files this First Amended Class Action Complaint against Defendant, G4S Secure Solutions (USA) Inc., ("Defendant" or "G4S") under the Fair Credit Reporting Act of 1970, as amended ("FCRA"), 15 U.S.C. § 1681 *et seq*., and states as follows:

## NATURE OF THE CASE

1.     Plaintiff brings this action against Defendant for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681a–1681x.

2.     The FCRA, 15 U.S.C. §1681b, makes it unlawful to obtain and use a "consumer report" for an employment purpose. Such use becomes lawful if and only if the "user" – in this case "Defendant"– has complied with the statute's strict disclosure and authorization requirements. 15 U.S.C. §1681b(b)(2).  Defendant

willfully violated these requirements in multiple ways, in systematic violation of Plaintiff's rights and the rights of other putative class member.

3.      More specifically, Defendant violated 15 U.S.C. § 1681b(b)(2)(A)(i) by procuring consumer reports on Plaintiff and other Putative Class members for employment purposes without following the law. Under this subsection of the FCRA, Defendant is required to disclose to its employees—in a document that consists solely of the disclosure—that it may obtain a consumer report on them for employment purposes.

4.      This disclosure must be made by employers prior to obtaining copies of employees', or prospective employees', consumers reports. *Id.*   A "consumer report" means any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for an employment purpose.

5.      Defendant willfully violated 15 U.S.C. § 1681b(b)(2) by failing to provide Plaintiff and other Putative Class members with a copy of a separate document consisting solely of Defendant's disclosure, stating that Defendant may obtain a consumer report on any person for employment purposes.

6.     Defendant also violated this requirement by failing to provide this disclosure to Plaintiff and other Putative Class members ***prior*** to obtaining a copy of the person's consumer report. (Emphasis added).

7.     Further, Defendant violated 15 U.S.C. § 1681b(b)(2)(A)(ii) by obtaining consumer reports for Plaintiff and other Putative Class members without proper authorization, due to the fact that its disclosure forms fail to comply with the requirements of the FCRA.

8.     In response to Defendant's willful violations of the FCRA, Plaintiff asserts two class claims under 15 U.S.C. §§ 1681b(b)(2)(A)(i)-(ii), on behalf of a "Background Check Class," consisting of:

> **All G4S employees and job applicants in the United States who were the subject of a consumer report that was procured by G4S, within five years of the filing of this complaint through the date of final judgment in this action, not first provided a stand-alone disclosure in violation of 15 U.S.C. § 1681b(b)(2)(A).**

9.     On behalf of and the Putative Class identified herein, Plaintiff seeks statutory damages, costs and attorneys' fees, equitable relief, and other appropriate relief under the FCRA.

## THE PARTIES

10.     Plaintiff is a former employee of Defendant and is also a member of the Putative Class defined below.

11.     Defendant is a Florida-based company incorporated under the laws of Florid but doing business in Tampa, Florida.

## JURISDICTION AND VENUE

12.     According to Defendant's Notice of Removal, "Plaintiff's Complaint, together with additional record evidence, establishes that this Court has subject matter jurisdiction over this matter."   (Doc. 1, ¶ 2).   Plaintiff agrees.

13.     Defendant's Notice of Removal also asserts that "Because Plaintiff's First Cause of Action is a federal question, the prerequisite for removal under 28 U.S.C. §1441 has been met, and this Court is vested with subject matter jurisdiction over this action." (Doc. 1, ¶ 6).  Plaintiff agrees.

14.     This Court has personal jurisdiction over Defendant as a Florida-based Corporation doing significant business in Tampa, Florida.

15.     Venue is proper in Hillsborough County, Florida.

## ALLEGATIONS REGARDING DEFENDANT'S BUSINESS PRACTICES

### *Background Checks*

16.     Defendant conducts background checks on the majority of its prospective employees as part of a standard screening process.

17.     Defendant does not perform these background checks in-house. Rather, Defendant relies on various outside consumer reporting firms to obtain this information, and return the corresponding reports to Defendant. These reports are "consumer reports" within the meaning of the FCRA.

### *FCRA Violations Relating to Background Check Class*

18.     Defendant procured consumer report information on Plaintiff in violation of the FCRA.

19.     Under the FCRA, it is unlawful to procure a consumer report or cause a consumer report to be procured for employment purposes, unless:

> (i)    a ***clear and conspicuous disclosure*** has been made in writing to the consumer at any time before the report is procured or caused to be procured, ***in a document that consists solely of the disclosure*** that a consumer report may be obtained for employment purposes; and

> (ii)   the consumer has authorized the procurement of the consumer report in writing (which authorization may be made on the document referred to in clause (i)).

15 U.S.C. §§ 1681b(b)(2)(A)(i)-(ii) (emphasis added).

20.     Defendant failed to satisfy these unambiguous disclosure and authorization requirements.  This is commonly referred to as the "stand alone disclosure" requirement.

21.     Simply put, Defendant does not have a stand-alone FCRA disclosure form that clearly and conspicuously states that a consumer report may be procured on prospective or current employees for employment purposes.

22.     The FCRA also contains several other notice provisions, such as 15 U.S.C. §1681b(b)(3)(a) (pre-adverse action); §1681b(4)(B)(notice of national security investigation); §1681c(h) (notification of address discrepancy); §1681g (full file disclosure to consumers); §1681k(a)(1) (disclosure regarding use of public record information); §1681h (form and conditions of disclosure; and §1681m(a) (notice of adverse action).

23.     The purpose of FCRA notice provisions, including 1681b(b)(2)(A)(i), is to put consumers on notice that a consumer report may be prepared. This gives

consumers the opportunity to exercise substantive rights conferred by the FCRA or other statutes, allowing consumers the opportunity to ensure accuracy, confidentiality and fairness.

24.     Defendant's disclosure form violates the plain language of the FCRA, and also flies in the face of unambiguous case law and regulatory guidance from the FTC.

25.     Defendant willfully disregarded this unambiguous case law and regulatory guidance, and it willfully violated 15 U.S.C. § 1681b(b)(2)(A) by procuring consumer report information on prospective or current employees and failing to comply with the disclosure and authorization requirements of the FCRA.

## **FACTUAL ALLEGATIONS**

26.     Pursuant to the FCRA, Defendant was required to first disclose to its employees—in a document that consists solely of the disclosure—that it may obtain a consumer report on them for employment purposes, prior to obtaining a copy of their consumer report.

27.     On or about June 19, 2020, Defendant procured a consumer report on Plaintiff by using the services of a third-party vendor that qualifies as a consumer reporting agency.   The consumer report contained private, highly confidential information about Plaintiff.

28.     However, before procuring that report, Defendant violated Plaintiff's rights by providing her with a disclosure form failed to follow the requirements of the FCRA.

6

29.    In fact, at least one federal appellate court determined that a disclosure nearly identical to one of the disclosure forms used by Defendant violates the FCRA as a matter of law.

30.    Specifically, in *Walker v. Fred Meyer* the Ninth Circuit looked at a nearly identical disclosure document and found that inclusion of the following language violated 15 U.S.C. 1681b(b)(2) as a matter of law:

<u>Language from *Fred Walker* disclosure</u>:

*You may inspect GIS's files about you (in person, by mail, or by phone) by providing identification to GIS. If you do, GIS will provide you help to understand the files, including communication with trained personnel and an explanation of any codes. Another person may accompany you by providing identification. If GIS obtains any information by interview, you have the right to obtain a complete and accurate disclosure of the scope and nature of the investigation performed.*

<u>Compared to language from G4S disclosure</u>:

*You have the right to make a request to G4S Secure Solutions (USA) Inc., upon proper identification, to request the nature and substance of all consumer report information in its file on you at the time of your request, including the sources of information; and the receipts of any consumer reports on you which G4S Secure Solutions (USA) Inc. has previously furnished within the two-year preceding your request.*

31.    Ultimately, in *Fred Walker*, the Court held that "[t]his language, however, may "pull[ ] the applicant's attention away from his privacy rights protected by the FCRA by calling his attention to the rights" that he has to inspect GIS's files.   *Walker v. Fred Meyer, Inc.*, 953 F.3d 1082, 1089 (9th Cir. 2020) (citing to *Syed v. M-I, LLC*, 853 F.3d 492, 502 (9th Cir. 2017) *and Gilberg v. Cal.*

*Check Cashing Stores, LLC*, 913 F.3d 1169, 1175–76 (9th Cir. 2019) (noting that additional information about rights under state laws, and references to extraneous documents like a summary of rights under the FCRA, was "as likely to confuse as it [wa]s to inform," and holding that the inclusion of such information violated the standalone disclosure requirement)).

32.     The *Fred Walker* court went on to told that the above language should have been provided in a separate document, because the information cannot reasonably be deemed part of a "disclosure ... that a consumer report will be obtained for employment purposes." 15 U.S.C. § 1681b(b)(2)(A)(i)." *Walker v. Fred Meyer, Inc.*, 953 F.3d 1082, 1090–91 (9th Cir. 2020).  (Emphasis added).

33.     Obviously, the above-two paragraphs are very similar in terms of both content and the wording is nearly identical.  For ease of reference the *Fred Meyer* disclosure is attached (Exhibit A) to the additional G4S disclosure provided yesterday (Exhibit B).

34.     The G4s disclosure, Exhibit B, violates the FCRA for the same reasons the *Fred Walker* disclosure violated the FCRA as a matter of law.

35.     To compound the confusion, in addition to providing Plaintiff with Exhibit B, Defendant also provided Plaintiff with an array of additional disclosure-related FCRA documents, none of which constitute a standalone disclosure.

36.     Those documents are attached as Exhibits C, D, and E.

37.     Exhibit C is referred to as an "Authorization to Obtain Consumer Report."

8

38.     Exhibit D is referred to as a "Disclosure Regarding Investigative Consumer Report."

39.     Exhibit E is referred to an "Authorization to Obtain Consumer Report."

40.     Upon information and belief Defendant intends for these multiple forms to somehow satisfy 15 U.S.C. § 1681(b)(2)(A)(i).  However, these forms, both individually and collectively, violate the FCRA's standalone disclosure requirement.

41.     This is particularly true because of the simultaneous presentation of these multiple forms, which are produced as part of a packet.  The multiple disclosure and authorization forms must be read as one as they were presented at the same time (as further evidenced by the fact that each was signed on the same day).

42.     None of the documents comply with the FCRA's stand-alone disclosure requirement, in violation of 15 U.S.C. § 1681(b)(2)(A)(i).  As explained above, Exhibit B violates the FCRA for the same reasons the Ninth Circuit Court of Appeals determined the *Fred Walker* disclosure form violates the FCRA as a matter of law.

43.     Beyond Exhibit B, if Defendant argues Exhibit C (referred to as an "Authorization to Obtain Consumer Report") is somehow an FCRA compliant disclosure document, Exhibit C contains a plethora of extraneous information in

flagrant disregard of the FCRA's stand-alone disclosure mandate, including, but not limited to the following:

- FCRA-violative state law disclosure information, including a "Notice of California Applicants," (which Plaintiff is not) containing criteria and information about California law;

- Additional multiple state law notices informing consumers of their additional rights under Minnesota, Oklahoma, and more information about California law (none of which apply here);

- An impermissible blanket authorization allowing Defendant to obtain nearly limitless information on Plaintiff and the putative class members from almost every source imaginable;

- An FCRA-violative agreement by which Plaintiff was forced to purportedly allow Defendant's customers with copies of the information and records Defendant obtained in Plaintiff's consumer report without any additional disclosure and/or authorization by Plaintiff, meaning Plaintiff and the putative class members' private information could be shared with anyone whom Defendant wanted to share it with provided they were also a customer;

- Required information mandating applicants disclose in the same document their Social Security Number; and, finally,

- An inaccurate and incomplete disclosure of the applicant's right to gain access to the report from G4S, which does not comport with the FCRA.

44.   Simply put, none of this information can be included in an FCRA disclosure form.

45.   Similarly, if Defendant argues Exhibit D ("Disclosure Regarding Investigative Consumer Report") is somehow an FCRA compliant disclosure document, because Exhibit D is identical to Exhibit B, Exhibit D violates 15 U.S.C.

§ 1681(b)(2)(A)(i) for the same reasons both the Exhibit B and the *Fred Walker* disclosure violate the FCRA.

46.     Additionally as to Exhibit D, Defendant is not entitled to use an investigative consumer disclosure—which is governed by the disclosure mandates found in 15 U.S. Code § 1681d (a separate section of the FCRA)—to satisfy the separate standalone disclosure requirements mandated b the FCRA for traditional consumer reports under § 1681(b)(2)(A)(i).

47.     The same is true for Exhibit E ("Authorization to Obtain Investigative Consumer Report").   If Defendant argues Exhibit E is somehow an FCRA compliant disclosure document, Exhibit E contains the same extraneous FCRA-prohibited state law information found in Exhibit C.

48.     Finally as to Exhibit E, once again Defendant is not entitled to use an investigative consumer disclosure/authorization—which is governed by the disclosure/authorization mandates found in 15 U.S. Code § 1681d (a separate section of the FCRA)—to satisfy its standalone disclosure obligation for traditional consumer reports used for an employment purpose under § 1681(b)(2)(A)(i).

49.     The multitude of non-compliant disclosure documents presented by Defendant confused Plaintiff.   The disclosure documents provided to Plaintiff contained extraneous information, the presence of which confused Plaintiff about her rights pursuant to the FCRA and distracted her while she was reading the documents.

50.     Plaintiff values her privacy and federally protected rights. If Plaintiff had known the disclosure forms Defendant provided were unlawful, Plaintiff would not have authorized Defendant to procure the consumer report.

51.     Defendant's violation was willful.  Defendant willfully violated this requirement by failing to comply with both the plain language of the FCRA, well-established case law, and the unambiguous regulatory guidance provided by the FTC.

52.     In fact, Defendant was required to first certify that it would comply with the requirements of the FCRA. To ensure knowing compliance with the FCRA, Congress requires that the employer must first certify to the consumer reporting agency that the employer shall comply with the disclosure, authorization, and if applicable, the adverse action requirements pursuant to 15 U.S.C. § 1681b(b)(1)(A). The consumer reporting agency may not procure a consumer report before this certification has been executed by the employer.

53.     Upon information and belief, and provided it complied with the law, Defendant knowingly executed a certification providing that it would comply with the disclosure and authorization provisions provided by the FCRA.

54.     Despite its certification, Defendant knowingly violated the FCRA by failing to comply with the Disclosure and Authorization requirements.

55.     Further, Defendant knew or should have known about its legal obligations under the FCRA. These obligations are well established in the plain language of the FCRA and in the promulgations of the Federal Trade Commission

and Consumer Financial Protection Bureau. Defendant obtained or had available substantial written materials, which apprised it of its duties under the FCRA.

56.     Additionally, there exists substantial case law on the discrete issue of compliance with 15 U.S.C. § 1681b(b)(2)(A)(i), including here in the Middle District of Florida, all of which Defendant had access to since at least 2016.

57.     Defendant knowingly violated 15 U.S.C. § 1681b(b)(2)(A)(i-ii) by failing to provide Plaintiff and the Putative Class with a copy of a document consisting solely of a disclosure stating that Defendant may obtain a consumer report on Plaintiff and the Putative Class for employment purposes, prior to obtaining a copy of their consumer reports.  As a result, Plaintiff seeks the relief provided for by the FCRA on behalf of herself and the putative class members she seeks to represent, as set forth further below.

## CLASS ACTION ALLEGATIONS

58.     Plaintiff assert claims pursuant to 15 U .S.C. §§ 1681b(b)(2)(A)(i)-(ii) in Counts I and II of this Complaint on behalf of a class defined as:

> **All G4S employees and job applicants in the United States who were the subject of a consumer report that was procured by Ollie within five years of the filing of this complaint through the date of final judgment in this action not first provided a stand-alone disclosure in violation of 15 U.S.C. § 1681b(b)(2)(A).**

59.     **Numerosity**: The Class is so numerous that joinder of all members is impracticable. Defendant regularly obtains and uses information in consumer reports to conduct background checks on prospective employees and current

13

employees. Based on information and belief, the Class is comprised of at least thousands of members who are geographically dispersed throughout the country so as to render joinder of all Class Members impracticable. The names and addresses of the Class Members are identifiable through documents maintained by the Defendant, and the Class Members may be notified of the pendency of this action by published and/or mailed notice.

60.   **Typicality**: Plaintiff's claims are typical of those of the members of the putative Class. Defendant typically uses consumer reports to conduct background checks on employees and prospective employees. The FCRA violations suffered by Plaintiff are typical of those suffered by other Putative Class members, and Defendant treated Plaintiff in a manner consistent with its treatment of other Putative Class members under its standard policies and practices.

61.   **Adequacy**: Plaintiff will fairly and adequately protect the interests of the Putative Class. Plaintiff's interests coincide with, and are not antagonistic to, other class members' interests. Plaintiff has retained counsel experienced in complex class action litigation.

62.   **Commonality**: Common questions of law and fact exist as to all members of the Putative Class, and predominate over any questions solely affecting individual members of the Putative Class. These common questions include, but are not limited to:

a.   Whether Defendant uses consumer report information to conduct background checks on employees and prospective employees;

b.    Whether Defendant's background check practices and/or procedures comply with the FCRA;

c.    Whether Defendant violated the FCRA by procuring consumer report information without making proper disclosures in the format required by the statute;

d.    Whether Defendant violated the FCRA by procuring consumer report information based on invalid authorizations;

e.    Whether Defendant's violations of the FCRA were willful;

f.    The proper measure of statutory damages; and

g.    The proper form of injunctive and declaratory relief.

63.    This case is maintainable as a class action under Fed.R.Civ.P. 23 because prosecution of actions by or against individual members of the Putative Class would result in inconsistent or varying adjudications and create the risk of incompatible standards of conduct for Defendant. Further, adjudication of each individual class member's claim as a separate action would potentially be dispositive of the interest of other individuals not a party to such action, thereby impeding their ability to protect their interests.

64.    This case is also maintainable as a class action under Fed.R.Civ.P. 23 because Defendant has acted or refused to act on grounds that apply generally to the Putative Class, so that final injunctive relief or corresponding declaratory relief is appropriate with respect to the class as a whole.

65.    Class certification is also appropriate under because questions of law and fact common to the Putative Class predominate over any questions affecting

only individual members of the Putative Class, and also because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Defendant's conduct, which is described in this Complaint, stems from common and uniform policies and practices, resulting in common violations of the FCRA. Members of the Putative Class do not have an interest in pursuing separate actions against Defendant, as the amount of each class members' individual claim for damages is small in comparison to the expense and burden of individual prosecution. Class certification will also obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendant's practices. Moreover, management of this action as a class action will not present any foreseeable difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all Putative Class members' claims in a single action, brought in a single forum.

66.    Plaintiff intends to send notice to all members of the Putative Class to the extent required by law. The names and addresses of the Putative Class members are readily available from Defendant's records, and are also available from the applicable consumer reporting agency from whom Defendant obtained the consumer reports at issue.

## COUNT I – VIOLATION OF 15 U.S.C. § 1681b(b)(2)(A)(i)

### Failure to Make Proper Disclosure in Violation of FCRA
### 15 U.S.C. § 1681b(b)(2)(A)(i)

67.     Plaintiff alleges and incorporates by reference the allegations of paragraphs 1-11 and 16-66 of this Amended Complaint as though fully set forth herein.

68.     In violation of the FCRA, the background check that Defendant required the Plaintiff and the Putative Class to complete as a condition of their employment with Defendant does not satisfy the disclosure requirements of 15 U.S.C. § 1681b(b)(2)(A)(i), because Defendant failed to provide a stand-alone document pertaining to how the consumer report information would be obtained and utilized.

69.     Defendant violated the FCRA by procuring consumer reports on Plaintiff and other Background Check Class members without first making proper disclosures in the format required by 15 U.S.C. § 1681b(b)(2)(A)(i). Namely, these disclosures had to be made: (1) before Defendant actually procured consumer reports, and (2) in a stand-alone document, clearly informing Plaintiff and other Background Check Class members that Defendant might procure a consumer report on each of them for purposes of employment.

70.     The foregoing violations were willful. Defendant knew that it was required to provide a stand-alone form prior to obtaining and then utilizing a consumer report on any of the Background Check Class members. By failing to do so, Defendant acted in deliberate or reckless disregard of its obligations and the

rights of Plaintiff and other Background Check Class members under 15 U.S.C. § 1681b(b)(2)(A)(i). Defendant knew or should have known of its legal obligations under the FCRA. These obligations are well established in both the plain language of the FCRA and in the promulgations of the Federal Trade Commission. Defendant obtained, or had available to it, substantial written materials that apprised it of its duties under the FCRA. Any reasonable employer would know of, or could easily discover, the FCRA's mandates.   Defendant's actions were also willful because:

> a. As a national security-guard company, a large part Defendant's entire business is processing job applications, procuring consumer reports, and placing people in various security positions. Thus, Defendant's entire business model depends on being able to legally process and place applicants at various locations, which, by definition, would require Defendant to understand FCRA compliance;
>
> b. Defendant knew of potential FCRA liability as the Defendant is a large corporation with access to legal advice through its own general counsel's office and outside employment counsel, and there is not contemporaneous evidence that it determined that its conduct was lawful;
>
> c. Defendant knew or had reason to know that their conduct was inconsistent with published case law, FTC guidance interpreting the FCRA and the plain language of the statute;
>
> d. Defendant voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless;
>
> e. The consumer reporting agency utilized by Defendant made available to information on how to comply with the FCRA;

f. Under 15 U.S.C. § 1681b(b)(1)(A) Defendant was required to first certify that it would comply with the requirements of the FCRA before obtaining any consumer report from a consumer reporting agency.  Thus, Defendant knew it was supposed to comply with 15 U.S.C. § 1681b(b)(2)(i);

### *Plaintiff's First Concrete Injury under § 1681b(b)(2)(A)(i): Informational Injury*

71.    First, as to the § 1681b(b)(2)(A)(i) claim, in accordance with the Eleventh Circuit's recent decision in *Church v. Accretive Health, Inc.*, 2016 U.S. App. LEXIS 12414, *1 (11th Cir. July 6, 2016), Plaintiff suffered a concrete informational injury because Defendant failed to provide Plaintiff with information to which he was entitled to by statute, namely a stand-alone FCRA disclosure form. Through the FCRA, Congress has created a new right—the right to receive the required disclosure as set out in the FCRA—and a new injury—not receiving a stand-alone disclosure.  The Plaintiff's "inability to obtain [that] information" is therefore, standing alone, "a sufficient injury in fact to satisfy Article III." *Spokeo*, 136 S. Ct. at 1549.

72.    Pursuant to § 1681b(b)(2), Plaintiff was entitled to receive certain information at a specific time, namely a disclosure that a consumer report may be procured for employment purposes in a document consisting solely of the disclosure. Such a disclosure was required to be provided to Plaintiff before the consumer reports were to be procured. By depriving Plaintiff of this information, Defendant injured Plaintiff and the putative class members they seek to represent. *Public Citizen v. U.S. Dept. of Justice*, 491 U.S. 440, 449 (1989); *Fed. Election Comm'n v. Akins*, 524 U.S. 11 (1998).

19

73.     Defendant violated the FCRA by procuring consumer reports on Plaintiff and other Background Check Class members without first making proper disclosures in the format required by 15 U.S.C. § 1681b(b)(2)(A)(i). Namely, these disclosures had to be made: (1) before Defendant actually procured consumer reports, and (2) in a stand-alone document, clearly informing Plaintiff and other Background Check Class members that Defendant might procure a consumer report on each of them for purposes of employment. The required disclosures were not made, causing Plaintiff an informational injury. *See Church v. Accretive Health, Inc.*, 2016 U.S. App. LEXIS 12414, *1 (11th Cir. July 6, 2016).

### *Plaintiff's Second Concrete Injury under § 1681b(b)(2)(A)(i): Invasion of Privacy*

74.     Second, as to the § 1681b(b)(2)(A)(i) claim, Defendant invaded Plaintiff's right to privacy. Under the FCRA, "a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless" it complies with the statutory requirements (*i.e.*, disclosure and authorization) set forth in the following subsections: 15 U.S.C. § 1681b(b)(2). As one court put it, "[t]he FCRA makes it unlawful to 'procure' a report without first providing the proper disclosure and receiving the consumer's written authorization." *Harris v. Home Depot U.S.A., Inc.*, 114 F. Supp. 3d 868, 869 (N.D. Cal. 2015).  Plaintiff's consumer report contained a wealth of extremely private information which Defendant had no right to access absent a specific Congressional license to do so (e.g., social Security Numbers, address history,

phone numbers, e-mail addresses, and information about any alleged criminal background information, work history, etc.). By procuring reports containing this private information without complying with first complying with the FCRA's disclosure requirements, Defendant illegally invaded Plaintiff's right to privacy. *Perry v. Cable News Network, Inc.*, No-16-13031, (11th Cir., April 27, 2017)(Violation of statutory right that has a close relationship to a harm traditionally recognized in English or American law is a concrete harm for purposes of Art. III standing).

75.   Third, as to the § 1681b(b)(2)(A)(i) claim, Defendant's above violations created a risk of harm that Plaintiff would be harmed in precisely the way Congress was attempting to prevent when it mandated what disclosures employers must make to applicants.  Without accurate source information as to what to do if the information in their reports was inaccurate, or what possible state law governed due to the extraneous state law information included in Defendant's disclosure, a consumer would be left confused as to where to go to correct erroneous data contained in a report and be unable to know whether any erroneous data would find its way into future consumer reports.

76.   Furthermore, Plaintiff would not have agreed to provide Defendant with access to her consumer report had he understood that the form did not fully comply with the law.

77.   As detailed above, *Spokeo* expressly recognized that "the risk of real harm" can be enough, on its own, to satisfy the concreteness requirement. 136 S.

Ct. at 1549. In particular, where Congress has found that a violation of a statutory right poses a "material risk of harm," a plaintiff "need not allege any *additional* harm beyond the one Congress has identified." *Id.* at 1549–50; *see also id.* at 1553 (Thomas, J., concurring) ("A plaintiff seeking to vindicate a statutorily created private right need not allege actual harm beyond the invasion of that private right.").

78.   Fourth, as to the § 1681b(b)(2)(A)(i) claim, the harm created by Defendant is also concrete in the sense that it involves a clear *de facto* injury, *i.e.*, the unlawful disclosure of legally protected information. Insofar as *Spokeo* directs us to consider whether an alleged injury-in-fact "has traditionally been regarded as providing a basis for a lawsuit," Congress has long provided plaintiffs with the right to seek redress for unauthorized disclosures of information that, in Congress's judgment, ought to remain private. *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 806 F.3d 125, 134 (3d Cir. 2015). Congress's reasons for enacting the FCRA show that it intended that the law be construed to promote the credit industry's responsible dissemination of accurate and relevant information, and afford consumers the substantive right to receive certain specified information, including a stand-alone disclosure *before* their consumer reports are obtained by prospective employers. Thus, Plaintiff has alleged an injury-in-fact based on Congress's having created a substantive legal right, the invasion of which creates standing.

79.     Finally, Defendant intruded upon Plaintiff's solitude and private affairs by accessing her consumer report, which contained highly confidential information (criminal history, credit-related info, etc.), without legal authority to do so.  There is no question the information from her consumer report on Plaintiff's criminal and credit history, along with employment and address information, is part of Plaintiff's private affairs.  Defendant's accessing this information without first complying with § 1681b(b)(2)(A)(i) is akin to looking through one's personal documents without the right to do so.

80.     Plaintiff and the Background Check Class are entitled to statutory damages of not less than one hundred Dollars ($100) and not more than one thousand Dollars ($1,000) for each and every one of these violations under 15 U.S.C. § 1681n(a)(1)(A), in addition to punitive damages under 15 U.S.C. § 1681n(a)(2).

81.     Plaintiff and the Background Check Class are further entitled to recover their costs and attorneys' fees, in accordance with 15 U.S.C. § 1681n(a)(3).

### COUNT II – VIOLATION OF 15 U.S.C. § 1681b(b)(2)(A)(ii)
### Failure to Obtain Proper Authorization in Violation of FCRA
### 15 U.S.C. § 1681b(b)(2)(A)(ii)

82.     Plaintiff alleges and incorporates by reference the allegations of paragraphs 1-11 and 16-66 of this Amended Complaint as though fully set forth herein.

83.     Defendant violated the FCRA by procuring consumer reports relating to Plaintiff and other Background Check Class members without proper authorization. *See* 15 U.S.C. § 1681b(b)(2)(A)(ii).

84.     The authorization requirement under 15 U.S.C. § 1681b(b)(2)(A)(ii) follows the disclosure requirement of § 1681b(b)(2)(A)(i) and presupposes that the authorization is based upon a valid disclosure. "After all, one cannot meaningfully authorize her employer to take an action if she does not grasp what that action entails." *Burghy v. Dayton Racquet Club, Inc.*, 695 F. Supp. 2d 689, 699 (S.D. Ohio 2010); *see also United States v. DeFries*, 129 F.3d 1293, 1307 (D.C. Cir. 1997) ("[A]uthorization secured 'without disclosure of . . . material information' is a nullity.")

85.     The foregoing violations were willful. Defendant acted in deliberate or reckless disregard of its obligations and the rights of Plaintiff and other Improper Disclosure and Authorization class members under 15 U.S.C. § 1681b(b)(2)(A)(ii). Defendant knew or should have known of its legal obligations under the FCRA. These obligations are well established in both the plain language of the FCRA and in the promulgations of the Federal Trade Commission. Defendant obtained, or had available to it, substantial written materials that apprised it of its duties under the FCRA. Any reasonable employer would know of, or could easily discover, the FCRA's mandates.   The foregoing actions were also willful because:

a. As a national security company, a large part Defendant's entire business is processing job applications, procuring consumer reports, and placing people in various positions— thus Defendant's entire business model depends on being able to legally process and place applicants with various customers, which, by definition, would include knowing FCRA compliance.

b. Defendant knew of potential FCRA liability as the Defendant is a large corporation with access to legal advice through its own general counsel's office and outside employment counsel, and there is not contemporaneous evidence that it determined that its conduct was lawful;

c. Defendant knew or had reason to know that their conduct was inconsistent with published case law, FTC guidance interpreting the FCRA and the plain language of the statute;

d. Defendant voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless;

e. The consumer reporting agency utilized by Defendant made available to information on how to comply with the FCRA;

### *Plaintiff's Concrete Injury under § 1681b(b)(2)(A)(ii): Invasion of Privacy*

86.    First, in terms of Plaintiff's claim under § 1681b(b)(2)(A)(ii), the authorization requirement under 15 U.S.C. § 1681b(b)(2)(A)(ii) follows the disclosure requirement of § 1681b(b)(2)(A)(i) and presupposes that the authorization is based upon a valid disclosure.    Thus, by violating §1681b(b)(2)(A)(i) Defendant invaded Plaintiff's right to privacy under § 1681b(b)(2)(A)(ii). Under the FCRA, "a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless" it complies with the statutory requirements (*i.e.*,

disclosure and authorization) set forth in the following subsections: 15 U.S.C. § 1681b(b)(2). As one court put it, "[t]he FCRA makes it unlawful to 'procure' a report without first providing the proper disclosure and receiving the consumer's written authorization." *Harris v. Home Depot U.S.A., Inc.*, 114 F. Supp. 3d 868, 869 (N.D. Cal. 2015).

87.     Plaintiff's consumer reports contained a wealth of extremely private information which Defendant had no right to access absent a specific Congressional license to do so. The consumer reports Defendant obtained on Plaintiff and the putative class members included highly sensitive and personal information. By procuring reports containing this private information without complying with first complying with the FCRA's disclosure requirements, Defendant illegally invaded Plaintiff's rights to privacy.

88.     Second, in terms of Plaintiff's claims under § 1681b(b)(2)(A)(ii), Defendant's above violations created a risk of harm that Plaintiff would be harmed in precisely the way Congress was attempting to prevent when it mandated what disclosures employers must make to applicants.   Without accurate source information as to what to do if the information in their reports was inaccurate, a consumer would be left confused as to where to go to correct erroneous data contained in a report and be unable to know whether any erroneous data would find its way into future consumer reports.   Furthermore, Plaintiff would not have agreed to provide Defendant with access to her consumer report had she known Defendant's FCRA forms were non-FCRA compliant.

26

89. As detailed above, *Spokeo* expressly recognized that "the risk of real harm" can be enough, on its own, to satisfy the concreteness requirement. 136 S. Ct. at 1549. In particular, where Congress has found that a violation of a statutory right poses a "material risk of harm," a plaintiff "need not allege any *additional* harm beyond the one Congress has identified." *Id.* at 1549–50; *see also id.* at 1553 (Thomas, J., concurring) ("A plaintiff seeking to vindicate a statutorily created private right need not allege actual harm beyond the invasion of that private right.").

90. Third, in terms of Plaintiff's claim under § 1681b(b)(2)(A)(ii), the harm created by Defendant is also concrete in the sense that it involves a clear *de facto* injury, i.e., the unlawful disclosure of legally protected information. Insofar as *Spokeo* directs us to consider whether an alleged injury-in-fact "has traditionally been regarded as providing a basis for a lawsuit," Congress has long provided plaintiffs with the right to seek redress for unauthorized disclosures of information that, in Congress's judgment, ought to remain private. *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 806 F.3d 125, 134 (3d Cir. 2015). Congress's reasons for enacting the FCRA show that it intended that the law be construed to promote the credit industry's responsible dissemination of accurate and relevant information, and afford consumers the substantive right to receive certain specified information, including a stand-alone disclosure *before* their consumer reports are obtained by prospective employers. Thus, Plaintiff have

alleged an injury-in-fact based on Congress's having created a substantive legal right, the invasion of which creates standing.

91.     For these reasons, and as stated below, Plaintiff has sufficiently alleged that she suffered a concrete and particularized "injury-in-fact" in connection with his claim for violations of § 1681b(b)(2)(A)(i) and (ii) in accordance with the standards set forth in *Spokeo*.

92.     Plaintiff and the Background Check Class are entitled to statutory damages of not less than one hundred Dollars ($100) and not more than one thousand Dollars ($1,000) for each and every one of these violations under 15 U.S.C. § 1681n(a)(1)(A), in addition to punitive damages under 15 U.S.C. § 1681n(a)(2).

93.     Plaintiff and the Background Check Class are further entitled to recover their costs and attorneys' fees, in accordance with 15 U.S.C. § 1681n(a)(3).

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, on behalf of and the Putative Class, prays for relief as follows:

(a)     Determining that this action may proceed as a class action under Rule 23;

(b)     Designating Plaintiff as class representative and designating Plaintiff's counsel as counsel for the Putative Class;

(c)     Issuing proper notice to the Putative Class at Defendant's expense;

(d)     Declaring that Defendant committed multiple, separate violations of the FCRA;

28

(e)     Declaring that Defendant acted willfully in deliberate or reckless disregard of Plaintiff's rights and its obligations under the FCRA;

(f)     Awarding statutory damages as provided by the FCRA, including punitive damages;

(g)     Awarding reasonable attorneys' fees and costs as provided by the FCRA; and

(h)     Granting other and further relief, in law or equity, as this Court may deem appropriate and just.

## **DEMAND FOR JURY TRIAL**

Plaintiff and the Putative Class demand a trial by jury for all issues so triable.

Dated this 13th day of September, 2021.

Respectfully submitted,

_____
**LUIS A. CABASSA**
Florida Bar Number: 0053643
**BRANDON J. HILL**
Florida Bar Number: 0037061
**WENZEL FENTON CABASSA, P.A.**
1110 N. Florida Avenue, Suite 300
Tampa, Florida 33602
Main Number: 813-224-0431
Direct Dial: (813) 379-2565
Facsimile: 813-229-8712
Email: lcabassa@wfclaw.com
Email: bhill@wfclaw.com
Email: gnichols@wfclaw.com
**Attorneys for Plaintiff**

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 13th day of September, 2021, the foregoing was electronically filed with the Clerk of the Court via the CM/ECF system, which will send a notice of electronic filing to:

Kristina L. Marsh, Esq.
Elizabeth E. Shuman, Esq.
Gordon Rees Scully Mansukhani
601 S. Harbour Island Boulevard, Suite 109
Tampa, FL  33602
Email: kmarsh@grsm.com
Email: eshuman@grsm.com

*/s/ Brandon J. Hill*
**BRANDON J. HILL**